UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22979-CIV-MORENO/TORRES

NORBERTO FUENTES,

    Plaintiff,

v.

MEGA MEDIA HOLDINGS, INC. *d/b/a*
MEGA TV and SPANISH BROADCASTING
SYSTEM OF DELAWARE, INC.,

    Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, defendants, Mega Media Holdings, Inc. ("Mega") and Spanish Broadcasting System, Inc. ("SBS") (collectively, "Defendants"),[1] respectfully submit their Motion to Dismiss and incorporated Memorandum of Law seeking the dismissal of counts two (violation of Florida Statutes § 540.08), and three (invasion of privacy) of the complaint filed on behalf of the plaintiff, Norberto Fuentes ("Fuentes") (the "Complaint") [D.E. 1], with prejudice.

**I. INTRODUCTION**

Counts two and three of Fuentes' Complaint must be dismissed as they are premised on a faulty understanding of both Florida Statutes § 540.08 and the common law tort of invasion of privacy. Both the statutory and common law right are premised on preventing unauthorized commercial endorsements. Neither right is violated by the mere mention of an individual's name

---

[1] Mega Media Holdings, Inc. does not do business as "Mega TV." Mega TV is the name of its television station owned and operated by Mega. Similarly, though Fuentes names Spanish Broadcasting System of Delaware, Inc. as a defendant, no such entity exists.

or the use of his likeness in connection with a news report, television show or motion picture. In fact, as made abundantly clear by both the plain language of Section 540.08 and by a long line of recent Florida cases, including decisions from this Court, the use of one's name, likeness, portrait or photograph whether in a news report, television show, novel, play, motion picture or otherwise, is not actionable unless the individual's name or likeness is used to ***directly promote*** a commercial product or service, separate and apart from the underlying publication.

In that Fuentes has failed to, and is incapable of, establishing that Defendants used his name, image or likeness to directly promote a product or service (*e.g.,* such as Mega TV T-shirts, hats, coffee mugs, etc.) separate and apart from Defendants' alleged broadcasts of *Maria Elvira Live*, counts two and three of his Complaint fail as a matter of law.

## II. <u>STATEMENT OF THE CASE</u>

On October 2, 2009, Fuentes filed his three count Complaint. As stated in his Complaint, Fuentes is "a well-known Cuban author and journalist … who spent many years alongside Fidel Castro during the Cuban Revolution." (*See* Complaint, ¶ 1). During the thirty-plus years that he spent alongside Fidel Castro, Fuentes purportedly took a number of photographs and private home movies of high-ranking members in the Castro Regime, including Raul Castro. (*Id.* at ¶¶ 1, 9).[2] These photographs are contained in Fuentes' literary works, including *El Ultimo Santuario*; *Dulces Guerreros Cubanos* and *The Autobiography of Fidel Castro*.

Fuentes alleges that, on or about July 15, 2008 "and in or around June of 2009," Defendants infringed his copyrights by incorporating his photographs, as well as snippets of *Angola* (his home movie), in their broadcast of *Maria Elvira Live*. (*Id.* at ¶ 13). Fuentes also alleges that Defendants further infringed his copyrights by posting website video clips on both

---

[2]   Fuentes' private home movie is entitled, *Angola*. (*See* Complaint, ¶ 11).

the Mega TV website and YouTube™. (*Id.* at ¶¶ 15-17).

Fuentes charges that Defendants' conduct was "willful" within the meaning of the Copyright Act. (*Id.* at ¶ 24). This last allegation is misplaced given the undeniable reality that Defendants do ***not*** produce, or otherwise exercise ***any*** creative dominion or editorial control over the television program, *Maria Elvira Live*, or its contents.[3]

### III.  LEGAL MEMORANDUM

#### A.  In Order to Withstand a Motion to Dismiss, Fuentes Must Allege Sufficient Factual Allegations to "Plausibly Suggest" that He is Entitled to the Requested Relief.

Rule 8(a) of the Federal Rules of Civil Procedure "requires ... 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting Fed. R. Civ. P. 8(a)(2), *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, as a starting point, the plaintiff must allege each of the elements of the "claim." *Twombly*, 550 U.S. at 555.

Stating the requisite elements of a claim is the first step. From there, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547. While, under this "plausibility standard," a "complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions ... [A] formulaic recitation of a cause of action's elements will not do." *Id.* at 545 (internal citations omitted); *accord, United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1269-70 (11th Cir. 2009); *Berry v. Budget Rent A Car Sys.*, 497 F. Supp. 2d 1361, 1364

---

[3]  Moreover, SBS is in the radio business. It is the owner and operator of twenty (20) Spanish-language radio stations in the top Hispanic markets of New York, Los Angeles, Miami, Chicago, San Francisco and Puerto Rico. It exercises no control over the contents broadcast by Mega TV and, as such, is improperly named as a defendant in this action.

(S.D. Fla. 2007) (Cohn, J.). *See also Twombly*, 556 U.S. at 556 n. 3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Consequently, "[t]o survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief." *James River Insurance v. Ground Down Engineering*, 540 F.3d 1270, 1274 (11th Cir. 2008) (internal quotations omitted); *Twombly*, 550 U.S. at 555, 570 ("Factual allegations must be enough to raise a right to relief above the speculative level;" allegations setting forth claims that are merely "conceivable" are insufficient). As the Second Circuit Court of Appeals has explained, *Twombly* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (overruled on other grounds). *See also, Weissman v. National Assoc. of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) ("Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of 'entitle[ment] to relief.'") (quoting *Twombly*, 556 U.S. at 557-58).

In short, while on a motion to dismiss the Court must "accept[ ] all factual allegations in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), as the United States Supreme Court held in *Twombly,* courts have been mistaken in interpreting *Conley* literally as holding that a claim should not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Twombly*, 550 U.S. at 546 (quoting *Conley*, 355 U.S. at 45-46). As the Supreme Court explained, the "no set of facts"

phrase is best forgotten as an " incomplete, negative gloss on an accepted pleading standard: *once a claim has been stated adequately*, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*

Here, and as demonstrated in greater detail below, Fuentes has failed to allege any factual allegations which, if true, state a viable cause of action or entitle him to the requested relief.

### B. Fuentes' Claim of Commercial Misappropriation of his Name or Likeness under Florida Statutes § 540.08 Fails as a Matter of Plain and Unmistakable Law.

Fuentes' Complaint demonstrates a fundamental misunderstanding of Florida Statutes § 540.08. Count two of the Complaint alleges that Defendants violated Florida Statutes § 540.08 by using his "name, portrait, photograph and/or home movies" during a broadcast of *Maria Elvira Live*, without his approval or authorization.[4] (*See* Complaint, ¶ 30). Even if true, this claim is unsustainable in accordance with a robust body of Florida law. Florida Statutes § 540.08 provides in pertinent part:

> No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by ... [s]uch person ... In the even the consent required ... is not obtained, the person whose name, portrait, photograph, or other likeness is so used ... may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof ...

Notably, sub-section 4(a) of the statute expressly provides that the provisions of Section 540.08 shall not apply to:

> (a) The publication, printing, display, or use of the name or likeness of any person in any newspaper, magazine, book, news broadcast or telecast, or other news medium or publication as part of any bona fide news report or

---

[4] Of note, the broadcast of *Maria Elvira Live* which occurred "on or about July 15, 2008" – which is the only episode specifically identified in the Complaint – does not mention Fuentes' name and does not use his image or likeness.

presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes.

This express limitation is fatal to Fuentes' claim.[5]

1. **Section 540.08 Claims Are Premised on the Unauthorized Use of an Individual's Name or Likeness for Commercial, Trade or Advertising Purposes.**

The gravamen of a Section 540.08 claim is that the plaintiff's name or likeness was "used for commercial, trade or advertising purposes." Fla. Stat. § 540.08. As used in the statute, the terms "trade," "commercial," or "advertising purpose" relate to the use of a person's name or likeness to directly promote a product or service. Barring such use, no cause of action exists. *See Nat'l Football League v. The Alley, Inc.*, 624 F. Supp. 6, 7 (S.D. Fla. 1983) (Kehoe, J.) ("Section 540.08 of the Florida Statutes prohibits uncensored use of an individual's name and likeness only when such use directly promotes a commercial product or service."); *Epic Metals Corp. v. Condec, Inc.*, 867 F. Supp. 1009, 1016 (M.D. Fla. 1994) ("Florida Statutes § 540.08 prevents the unauthorized use of a name or personality to directly promote the product or service of the publisher."); *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1212-13 (M.D. Fla. 2002) (same); *Loft v. Fuller*, 408 So. 2d 619, 622 (Fla. 4th DCA 1981) ("In our view, Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial, or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher."). The stated purpose of Section 540.08 is to prevent unauthorized commercial endorsements.

This point was made abundantly clear by the Eleventh Circuit Court of Appeals in *Valentine v. C.B.S. See* 698 F.2d 430 (11th Cir. 1983). In *Valentine*, the plaintiff's Section 540.08 claim was premised on the unauthorized use of her name in Bob Dylan and Jacques

---

[5] *Maria Elvira Live* is a primetime news show, featuring the talents of Maria Elvira Salazar, a five-time Emmy award-winning broadcaster.

Levy's song, "Hurricane," which gained a measure of popularity. *Id.* at 431. The song depicted the murder trial of prizefighter Ruben "Hurricane" Carter and referenced a witness – the plaintiff, Patty Valentine. Miss Valentine filed suit alleging, among other things, the unauthorized publication of her name in violation of Florida Statutes § 540.08. *Id.*

The Court dismissed the plaintiff's § 540.08 claim given that the defendants did not use the plaintiff's name to directly promote a product or service. In rendering its ruling, the Eleventh Circuit Court of Appeals emphasized that the use of one's name, likeness, portrait or photograph, by itself, does not give rise to a valid cause of action. *Id.* at 433 ("Use of a name is not harmful simply because it is included in a publication sold for profit … [A]n interpretation that the statute absolutely bars the use of an individual's name without consent for any purpose would raise grave questions as to constitutionality.").

  **2.** **Use 'For the Purpose of Trade' Does *Not* include the Use of a Person's Identity in News Reporting, Commentary or Entertainment.**

Following *Valentine*'s lead, there are a number of Florida cases which hold that the use of one's name, likeness, portrait or photograph (hereinafter, "name and likeness"), whether in a news report, television show, novel, play, motion picture or otherwise, is not actionable unless the individual's name or likeness is used to directly promote a commercial product or service, ***separate and apart*** from the publication. *Lane*, 242 F. Supp. 2d 1205 (M.D. Fla. 2002), *Tyne v. Time Warner Entm't Co.*, 204 F. Supp. 2d 1338 (M.D. Fla. 2002) and *Loft v. Fuller*, 408 So. 2d 619 (Fla. 4th DCA 1981) are all squarely on point.

  **a.** ***Lane v. MRA Holdings***

In *Lane*, the plaintiff, Veronica Lane, was indisputably displayed in the defendant's *Girls Gone Wild* video. *Id.* at 1209-1210, 1213. Ms. Lane's image and likeness were also irrefutably

used to sell copies of the video, as her image appeared on the cover of the DVD. Yet, Ms. Lane's image and likeness were never associated with a product or service **unrelated** to the video. "Indeed, in both the video and the commercial advertisements [for the video], Lane is never shown endorsing or promoting a product, but rather as part of an expressive work in which she voluntarily participated." *Id.* at 1213. As a consequence, the United States District Court for the Middle District of Florida held that the use of her image and likeness in *Girls Gone Wild* and in the marketing of that video did not violate Florida Statutes § 540.08.

In reaching this conclusion, the *Lane* Court relied upon Section 47 of the Restatement (Third) of Unfair Competition, which defines the "purposes of trade" as follows:

> The names, likeness and other indicia of a person's identity are used 'for the purpose of trade' ... if they are used in advertising the user's goods or services, or are placed on merchandise marketed by the user, or are used in connection with services rendered by the user. However, use 'for the purpose of trade' does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising incidental to such uses.
>
> Therefore, under this definition, the 'use of another's identity in a novel, play or motion picture is ... not ordinarily an infringement ... [unless] the name or likeness is used solely to attract attention to a work that is not related to the identified person.

*Id.* at 1213.

### b.     *Tyne v. Time Warner Entm't Co.*

In *Tyne*, the surviving children and spouse of the crew of the *Andrea Gail*, a commercial fishing vessel which was lost at sea and the focal point of the motion picture, *The Perfect Storm*, filed suit against Time Warner. *See* 204 F. Supp. 2d at 1341-42. In October 1991, the *Andrea Gail* was caught in a severe storm and lost at sea. Its crew perished. Due to the interest in the unusual meteorological forces that caused the storm, the *Andrea Gail*'s plight became the subject of new stories and, ultimately, the best-selling book and motion picture, *The Perfect Storm*.

As part of their complaint, the plaintiffs alleged that, by using the names and likenesses of the crew members in the motion picture, without consent, Time Warner had violated Section 540.08. The *Tyne* Court rejected the plaintiffs' claim, granting summary judgment in favor of Time Warner. In reaching its decision, the *Tyne* Court held that the use of the plaintiffs' names and likenesses in connection with the promotion and the advertisement of *The Perfect Storm* did not violate Florida Statutes § 540.08, because "[a] motion picture is not ... in and of itself, a 'commercial purpose.'" *Id.* at 1341. Specifically, the *Tyne* Court ruled:

> Use 'for the purposes of trade' does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or non-fiction, or in advertising that is incidental to such uses.

*Id.* at 1342.

The Court further held that the "promotion and advertisement of the [motion] picture also [did] not constitute a commercial purpose." *Id.* In so ruling, the *Tyne* Court relied heavily upon *Loft v. Fuller*'s holding (discussed in greater detail below):

> While we agree that at least one of the purposes of the author and publisher in releasing the publication in question was to make money through the sales of copies of the book and that such a publication is commercial in that sense, this in no way distinguished this book from almost all other books, magazines or newspapers and ***simply does not amount to the kind of commercial exploitation prohibited by the statute***.

*See* 204 F. Supp. 2d at 1341 (citing 408 So. 2d at 622-23) (emphasis added).

### c. *Loft v. Fuller*

In *Loft*, the trial court dismissed the Florida Statutes § 540.08 claim brought by Loft's family, which was premised on the use of Robert Loft's name and likeness in a non-fiction book, *The Ghost of Flight 401*, which was later made into a motion picture. In dismissing this count, the court found "that the use of the decedent's name in the publication of *The Ghost of Flight*

*401*, and the use of his name in the subsequent movie did not constitute commercial trade or advertising." *Loft,* 408 So. 2d at 621. The appellate court affirmed, holding:

> In our view, Florida Statutes § 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher. Thus, the publication is harmful not simply because it is included in a publication that is sold for profit, but rather because of the way it associates the individual's name or his personality *with something else*.

*Id.* at 622-23 (emphasis added). The *Loft* Court's ruling "makes it clear that merely using an individual's name or likeness in a publication is *not* actionable under § 540.08." *Tyne,* 204 F. Supp. 2d at 1341-42.

### d. *John Daly Enterprises, LLC v. Hippo Golf Company*

A recent decision rendered by this Court, *John Daly Enterprises, LLC v. Hippo Golf Co.,* 2009 WL 2488272 (S.D. Fla. Aug. 13, 2009) (Zloch, J.), further reveals the frivolity of Fuentes' claim. At issue was the defendant's continued display of John Daly's ("Daly") name and likeness on its web-site. Daly is a professional golfer, who despite well-documented personal problems, remains one of the most popular and marketable figures in golf. John Daly Enterprises, LLC ("JDE") owns all of Daly's intellectual property rights, including several trademarks. The defendant, Hippo Golf Company, Inc. ("Hippo"), sells golf apparel, equipment and merchandise.

In 2001, the parties entered into a contract by which Daly was to act as a principal spokesman for Hippo. After the expiration of the parties' contractual relationship, Hippo continued to feature Daly on its web-site under the heading, "Players Previously Associated With Hippo." *Id.* at * 4. Hippo's web-site displayed a photograph of Daly and stated:

> The twice major winner and golfing superstar, John Daly, will continue to be synonomous [sic] Hippo. Renowned as the longest hitter in the professional game, Daly truly had the power of Hippo behind his game, working closely with

>   the Hippo design teams over the years to produce some of the most technologically advanced woods to hit the golf market.

*Id.*

In granting summary judgment in JDE's favor, this Court found that, irrespective of the truthfulness of Hippo's statements, Hippo's web-site improperly used Daly's name and likeness to directly promote its golf equipment. *Id.*

Unlike in *Daly,* and because Mr. Fuentes has failed to – and simply cannot – establish that Defendants used his name, image or likeness to directly promote a product or service (*e.g.,* Mega TV T-shirts, hats, coffee mugs, etc.) separate and apart from the alleged broadcasts of *Maria Elvira Live*, his claim for violation of Florida Statutes § 540.08 fails as a matter of law.[6] The law on this point is abundantly and, as a consequence, Fuentes' commercial appropriation claim must be dismissed with prejudice in accordance with *Twombly*.

### C. Fuentes' Claim of Common Law Invasion of Privacy Fails as a Matter of Law.

#### 1. Fuentes' Claim for Common Law Appropriation Suffers from the Same Infirmities as His Section 540.08 Claim.

Fuentes' claim for common law appropriation of his name and likeness (count three) similarly fails. Although section 540.08 codifies the common law right against misappropriation, the statute nonetheless permits a party to proceed under available common law invasion of privacy theories. *See* Fla. Stat. § 540.08(7) ("The remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy.") Notwithstanding this fact, in order to prevail on a common law claim of appropriation, the plaintiff must *still* demonstrate that

---

[6] *Compare* ¶ 30 of the Complaint: "Defendants published, printed, displayed or otherwise publicly used for purposes of trade or for commercial or advertising purposes, Fuentes' name, portrait, photograph, and/or home movies *during a broadcast* on … 'Maria Elvira Live,' all without approval or authorization from Plaintiff and thereafter posting on their website the videoclips [sic] from the 'Maria Elvira Live' show."

>   the Hippo design teams over the years to produce some of the most technologically advanced woods to hit the golf market.

*Id.*

In granting summary judgment in JDE's favor, this Court found that, irrespective of the truthfulness of Hippo's statements, Hippo's web-site improperly used Daly's name and likeness to directly promote its golf equipment. *Id.*

Unlike in *Daly,* and because Mr. Fuentes has failed to – and simply cannot – establish that Defendants used his name, image or likeness to directly promote a product or service (*e.g.,* Mega TV T-shirts, hats, coffee mugs, etc.) separate and apart from the alleged broadcasts of *Maria Elvira Live*, his claim for violation of Florida Statutes § 540.08 fails as a matter of law.[6] The law on this point is abundantly and, as a consequence, Fuentes' commercial appropriation claim must be dismissed with prejudice in accordance with *Twombly*.

### C. Fuentes' Claim of Common Law Invasion of Privacy Fails as a Matter of Law.

#### 1. Fuentes' Claim for Common Law Appropriation Suffers from the Same Infirmities as His Section 540.08 Claim.

Fuentes' claim for common law appropriation of his name and likeness (count three) similarly fails. Although section 540.08 codifies the common law right against misappropriation, the statute nonetheless permits a party to proceed under available common law invasion of privacy theories. *See* Fla. Stat. § 540.08(7) ("The remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy.") Notwithstanding this fact, in order to prevail on a common law claim of appropriation, the plaintiff must *still* demonstrate that

---

[6] *Compare* ¶ 30 of the Complaint: "Defendants published, printed, displayed or otherwise publicly used for purposes of trade or for commercial or advertising purposes, Fuentes' name, portrait, photograph, and/or home movies *during a broadcast* on … 'Maria Elvira Live,' all without approval or authorization from Plaintiff and thereafter posting on their website the videoclips [sic] from the 'Maria Elvira Live' show."

the defendant commercially used the value of the plaintiff's name for commercial, trade or advertising purposes. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1320, n. 1 (11th Cir. 2006) (finding that the statutory and common law rights of publicity are "substantially identical"); *Epic Metals*, 867 F.2d at 1017 ("[Common law] [a]ppropriation of one's name or likeness has been compared to impairment of a property right which involves an aspect of unjust enrichment to the publisher.")

Count three of Fuentes' Complaint merely alleges: "Defendants used Plaintiff's name or picture during a television broadcast and posted on a website for the purpose of benefitting from the potential name recognition." (Complaint, ¶ 33). Even if true, this allegation does not give rise to a common law claim for appropriation, as there is no allegation that Defendants used Fuentes' name or likeness to directly promote a commercial product or service, separate and apart from the publication. *See Epic Metals*, 867 F.2d at 1017 (granting summary judgment where there was no evidence that the defendant's name or personality was commercially exploited).

### 2. The Newsworthiness Exception Precludes a Claim for Intrusion.

Additionally, to the extent that count three of Fuentes' Complaint is attempting to state a claim for intrusion (as suggested by paragraph 34),[7] this claim fails given that Florida courts have long recognized a newsworthiness exception to invasion of privacy claims. *See, e.g., Jacova v. S. Radio & Television Co.*, 83 So. 2d 34, 36 (Fla. 1955).

In *Jacova*, the Florida Supreme Court held that "a television company ... has a qualified privilege to use in its telecast the name or photograph of a person who has become an 'actor' in a newsworthy event." *Jacova*, 83 So. 2d at 37. The Court explained that "it is settled law in this

---

[7] Florida common law recognizes four branches of the tort of invasion of privacy: appropriation, intrusion, public disclosure of private facts, and false light in the public eye. *See Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003).

state ... [that] the right of privacy does not necessarily protect a person against the publication of his name or photograph in connection with the dissemination of legitimate news items or other matters of public interest." *Id.* at 36. *See also Cason v. Baskin*, 20 So. 2d 243, 251 (Fla. 1945) ("the truth may be spoken, written, or printed about all matters of a public nature, as well as matters of a private nature in which the public has a legitimate interest."); *Cape Publ'ns, Inc. v. Bridges*, 423 So. 2d 426, 428 (Fla. 5th DCA 1982) ("Courts should be reluctant to interfere with a newspaper's privilege to publish news in the public interest."); *Valentine,* 698 F. 2d 430, 432 (11th Cir. 1983) ("under Florida law the publication of facts regarding matters of legitimate public interest or general interest will not support an invasion of privacy action.").

Consequently, even if Fuentes' name and likeness was used in connection with the news stories telecasted on *Maria Elvira Live*, the public's interest in the news story prevails over Mr. Fuentes' right to privacy. By his own admission, Fuentes is a "well-known Cuban author," who spent more than three decades "alongside Fidel Castro." (*See* Complaint, ¶ 1). As a consequence of this alleged proximity to Castro, Fuentes was privy to information regarding General Arnaldo Ochoa and Colonel Tony de la Guardia and their purported execution by firing squad. The episodes of *Maria Elvira Live* purportedly at issue relate to the anniversary of General Arnaldo Ochoa and Colonel Tony de la Guardia's alleged execution. *See Cason*, 20 So. 2d at 252 (invasion of privacy entails dissemination of matters having "no legitimate relation ... to any act done by [the plaintiff] in a public or quasi-public capacity.") (quoting Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193 (1890)). *See also Klein v. McGraw-Hill, Inc.*, 263 F. Supp. 919, 921 (D. D.C. 1966) (plaintiff cannot recover for misappropriation of his identity or likeness in a newsworthy publication unless its use has "no real relationship" to

the publication's subject matter) (quoting *Dallesandro v. Henry Holt & Co.*, 166 N.Y.S.2d 805, 806 (1957)).

Stated simply, Fuentes cannot, in one breathe, claim to be an expert on a particular topic and then, in the next breath, claim an intrusion of privacy when his name is used in connection with the very topic on which he purports to be an expert. Thus, to the extent that Fuentes is attempting to allege a claim for intrusion, this claim fails as a matter of law and should be dismissed with prejudice in accordance with *Twombly*.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, defendants, Mega Media Holdings, Inc. and Spanish Broadcasting System, Inc. respectfully request that counts two and three of Norberto Fuentes' Complaint should be dismissed with prejudice.

Dated:   October 27, 2009

                                                Respectfully Submitted,

                                                By: <u>*s/* James G. Sammataro</u>
                                                    James G. Sammataro
                                                    Florida Bar No. 0520292
                                                    JSammataro@kasowitz.com
                                                    **KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
                                                    Four Seasons Tower
                                                    1441 Brickell Avenue, Suite 1420
                                                    Miami, Florida 33131
                                                    Telephone: (305) 377-1666
                                                    Facsimile: (305) 377-1664

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 27th, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a notice of the foregoing document is being served this day on all counsel of record identified in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF this 27th day of October, 2009 to:

The Burton Law Firm
**Richard J. Burton, Esq.**
Attorney for Plaintiff, Norberto Fuentes
2999 N.E. 191 Street, Suite 805
Aventura, Florida 33180
Telephone: (305) 705-0888
Facsimile: (305) 705-0008

                                                s/ James G. Sammataro
                                                Attorney