UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **09-22979-CIV-MORENO**

NORBERTO FUENTES,

    Plaintiff,

vs.

MEGA MEDIA HOLDINGS, INC. d/b/a MEGA TV and SPANISH BROADCASTING SYSTEM OF DELAWARE, INC.,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

Plaintiff, Norberto Fuentes, is bringing a copyright infringement action against Defendants, who broadcast the *Maria Elvira Live* show. He claims that Defendants illegally used his copyrighted materials and his name and likeness during a telecast of the show. Plaintiff also asserts statutory and common law claims for appropriation of his name and likeness, which are at issue in the motion to dismiss. Because the Court agrees Plaintiff's pleadings do not state a claim under Florida Statute § 540.08 and the common law doctrine, the Court grants the motion to dismiss without prejudice.

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss Counts 2 and 3 **(D.E. No. 3)**, filed on **October 27, 2010**.

THE COURT has considered the motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED. Plaintiff may file an amended complaint in accordance with this Order by no later than **July 12, 2010**. Failure to do so may be grounds for

dismissal of the remaining claim.

## I. BACKGROUND

Plaintiff, Norberto Fuentes, is a Cuban author who wrote a book entitled "Dulces Guerreros Cubanos," which included photographs taken of Raul Castro and other members of the Castro regime. Plaintiff is the owner of the book's copyright and its registration. Additionally, throughout his career, Plaintiff has created personal private home movies of Raul Castro and other members of the Castro regime. These personal movies are not published or copyrighted, with the exception of one titled "Angola," which has a registered copyright.

Plaintiff's complaint is centered around Defendants' purportedly wrongful use of Plaintiff's copyrighted material. More specifically, Plaintiff complains Defendants infringed on Plaintiff's copyrights by using the material in a broadcast on the Maria Elvira Salazar television program, called *Maria Elvira Live*, without Plaintiff's consent. Defendant also allegedly uploaded the same copyrighted material to the Internet, by posting video clips of the show on the website and uploading the material to "You Tube." Plaintiff claims he did not authorize such use of his copyrighted material. In addition to using the copyrighted material, Plaintiff claims Defendants illegally used his image and likeness during the *Maria Elvira Live* show and posted it on "You Tube."

Plaintiff has alleged three (3) causes of action against Defendants: (1) Copyright Infringement; (2) Unauthorized Publication of Name or Likeness in violation of Florida Statute § 540.08; and (3) Invasion of Privacy under Florida law. Defendant has moved to dismiss counts 2 and 3, the statutory and common law appropriation claims. The copyright claim is not at issue in the motion to dismiss.

## II. LEGAL STANDARD

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

## III. LEGAL ANALYSIS

A. *Count 2: Florida Statute § 540.08*

Florida Statute § 540.08 prohibits the unauthorized publication of a person's name or likeness. It reads:

> No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by . . . [s]uch person.

§ 540.08, Fla. Stat. To maintain a cause of action for a violation of section 540.08, a plaintiff must allege that his or her name or likeness is used to directly promote a commercial product or service,

such as T-shirts, hats, coffee mugs, etc. *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205 (M.D. Fla. 2002); *Tyne v. Time Warner Entm't Co.*, 204 F. Supp. 2d 1338 (M.D. Fla. 2002); *Loft v. Fuller*, 408 So. 2d 619 (Fla. 4th DCA 1981).

At issue in the motion to dismiss is whether the allegations sufficiently establish that Defendants used Plaintiff's name to promote the *Maria Elvira Live* show. Defendants suggest Plaintiff's allegations fail to meet the *Twombly* standard and Plaintiff argues whether his name was used to promote the *Maria Elvira Live* show is an issue of fact not properly before the Court on a motion to dismiss. Paragraph 30 of the Complaint sets forth the relevant allegations. It says:

> Defendants published, printed, displayed or otherwise publicly used for purposes of trade or for commercial or advertising purposes, Fuentes' name, portrait, photograph, and/or home movies during a broadcast on . . . 'Maria Elvira Live,' all without approval or authorization from Plaintiff and thereafter posting on their website the videoclips [sic] from the 'Maria Elvira Live' show.

Under *Twombly* and *Iqbal*, the Court does not find Plaintiff's allegations sufficient to state a claim especially given the robust body of Florida law interpreting Florida Statute § 540.08. Paragraph 30 of Plaintiff's complaint merely states that Defendants published or displayed his name and home movies <u>during</u> a broadcast on *Maria Elvira Live* and on the show's website without his consent.

Inclusion of one's name, likness, portrait, or photograph in any type of publication *alone* does not give rise to a valid cause of action. *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983); *Nat'l Football League v. The Alley, Inc.*, 624 F. Supp. 6, 7 (S.D. Fla. 1983) ("[S]ection 540.08 of the Florida Statutes prohibits uncensored use of an individual's name and likeness only when such use directly promotes a commercial product or service). In *Valentine*, the Eleventh Circuit upheld a

decision to grant summary judgment against Plaintiff Patty Valentine, who brought a claim under Florida Statute § 540.08 when Bob Dylan used her name in a song regarding a murder trial in which she testified. *Valentine*, 698 F.2d at 433. The Eleventh Circuit reasoned that because the defendants did not use her name to directly promote a product or service, "use of a name is not harmful simply because it is included in a publication sold for profit." *Id.*

Following *Valentine*, there are a number of Florida cases that hold the use of one's name, likeness, portrait or photograph, whether in a news report, television show, play, novel, or the like is not actionable unless the individual's name or likeness is used to directly promote a commercial product or service, *separate and apart* from the publication. *Lane*, 242 F. Supp. 2d 1205 (M.D. Fla. 2002); *Tyne*, 204 F. Supp. 2d 1338 (M.D. Fla. 2002); *Loft,* 408 So. 2d 619 (Fla. 4th DCA 1981).

In *Lane*, defendants indisputably displayed the plaintiff in their *Girls Gone Wild* video. Her image appeared on the cover of the DVD. Yet, plaintiff's image and likeness were never associated with a product or service *unrelated* to the video. In reaching this conclusion, the *Lane* Court relied on Section 47, Restatement (Third) of Unfair Competition, which states:

> [U]se 'for the purpose of trade' does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction, or nonfiction, or in advertising incidental to such uses.
>
> Therefore, under this definition, the 'use of another's identity in a novel, play or motion picture is . . . not ordinarily an infringement . . . [unless] the name or likeness is used solely to attract attention to a work that is not related to the identified person.

*Id.* at 1213. Like the plaintiff in *Lane*, Plaintiff in this case does not allege that his name and likeness were used to promote a product or service *separate and apart* from the television show. Unlike *Lane*, however, Plaintiff in this case alleges that his name and likeness were used without

his consent.

In that respect, the allegations in this complaint resemble *Tyne*, in which the district court granted summary judgment. In *Tyne*, the surviving children and spouse of the crew of the *Andrea Gail*, a commercial fishing vessel that was lost at sea and the focal point of the motion picture, *The Perfect Storm*, filed suit against Time Warner alleging a violation of Florida Statute § 540.08, because Time Warner had used the names and likenesses of the crew members without consent in the motion picture. In granting summary judgment, the *Tyne* Court held the use of the plaintiffs' names and likenesses in connection with the promotion of the motion picture, *The Perfect Storm*, did not violate Florida Statute § 540.08, because "[a] motion picture is not . . . in and of itself, a 'commercial purpose.'" *Id.* at 1341. The *Tyne* Court stated:

> While we agree that at least one of the purposes of the author and publisher in releasing the publication in question was to make money through the sales of copies of the book and that such a publication is commercial in that sense, this in no way distinguished this book from almost all other books, magazines or newspapers and simply does not amount to the kind of commercial exploitation prohibited by the statute.

*Id.*, 204 F. Supp. 2d at 1341.

Section 540.08 is "designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher." The district court in *Loft* states that "the publication is harmful not simply because it is included in a publication that is sold for profit, but rather because of the way it associates the individual's name or his personality with something else." *Id.*, 408 So. 2d at 622-23.

*Valentine*, *Lane*, *Tyne*, and *Loft* all make clear that the allegations contained in paragraph 30 of Plaintiff's complaint are insufficient to state a cause of action under Florida Statute § 540.08. As

support for his claim, Plaintiff cites to *Nottage v. American Express Co.*, 452 So. 2d 1066 (Fla. 3d DCA 1984) and *Ewing v. A-1 Mgm't, Inc.*, 481 So. 2d 99 (Fla. 3d DCA 1986). In *Nottage*, the plaintiff set forth a claim for commercial exploitation under the statute because the defendants used his likeness on a poster advertising their condominium building and on postcards that were mailed to potential customers in other countries. In *Nottage*, the publication was explicitly a commercial one intended to sell units in the building. *See also Daly v. Hippo Golf Co.*, 2009 WL 2488272 (S.D. Fla. Aug. 13, 2009) (finding a violation of the statute when defendant used John Daly's name and likeness to promote golf equipment on its website selling golf equipment). Unlike *Nottage*, the publication here, the *Maria Elvira Live* show, is a television program intended to entertain and/or inform the public. There is no allegation that Mr. Fuentes's name and likeness was used to promote some other product or service on the show. *Ewing* also fails to support the Plaintiff's position as the court in that case found the publication of plaintiffs' likeness not actionable under § 540.08.

Indeed, should the record be undisputed at summary judgment that the factual allegations in paragraph 30 are true, Plaintiff would still be unable to survive summary judgment as his allegations are insufficient to state a claim under Florida Statute § 540.08. Under *Twombly* and *Iqbal*, it is appropriate for the Court to dismiss the claim. *Iqbal*, 129 S. Ct. at 1950 ("only a complaint that states a plausible claim for relief survives a motion to dismiss."). In this case, the allegations are insufficient to state a cause of action for statutory appropriation. That being said, if Plaintiff can allege that Defendants used his name and likeness to promote some other product or service, then the Plaintiff may do so in an amended complaint.

Having determined that Plaintiff's name and likeness was not used for trade, commercial, or advertising purposes, the Court need not address the issue of whether the *Maria Elvira Live* shows

falls within the § 540.08(3) exception for publications "having a current and legitimate public interest."

B. *Count 3: Invasion of Privacy*

The statutory remedies found in Florida Statute § 540.08(7) are "in addition to, and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy." § 540.08(7), Fla. Stat. Under Florida common law, the tort of invasion of privacy is divided in the following four categories: (1) intrusion into individual's physical solitude or seclusion; (2) public disclosure of private facts; (3) portraying individual in false light in public eye; and (4) appropriation, i.e. commercial exploitation of property value of one's name. In addition to the statutory claim, Plaintiff files a claim for common law appropriation and to a certain extent he attempts to state a claim for intrusion.

To prevail on the common law claim, Plaintiff must allege Defendant commercially used the value of Plaintiff's name for commercial, trade, or advertising purposes. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1320 n.1 (11th Cir. 2006) (finding that the statutory and common law rights of publicity are "substantially identical"). In *Almeida*, the Eleventh Circuit upheld the dismissal of a common law invasion of privacy - misappropriation claim without employing an analysis separate from the statutory one under § 540.08. *Id.*; *Lane*, 242 F. Supp. 2d at 1220-1221, n. 70. The *Lane* Court likewise dismissed the common law claim for appropriation because the plaintiff failed to show defendants used her image to promote a product or service *separate and apart* from the television show. In following the guidance set forth by the Eleventh Circuit, this Court employs the same analysis as that used to evaluate the statutory claim to determine whether the allegations sufficiently state a cause of action.

Paragraph 33 of Plaintiff's complaint is at issue. It reads:

> Defendants used Plaintiff's name or picture during a television broadcast and posted on a website for the purpose of benefitting from the potential name recognition.

Even if the allegations in this paragraph were true, it does not sufficiently state a common law appropriation claim because it does not state Defendants used Plaintiff's name or picture to promote a product or service *separate and apart* from the television show.

Moreover, to the extent that Plaintiff is attempting to state a cause of action for intrusion, Florida law is well-settled that television companies have a qualified privilege to use the name or photograph of a person who has become an "actor" during telecasts. *See e.g., Jacova v. S. Radio & Television Co.*, 83 So. 2d 34, 37 (Fla. 1955) (where one becomes an actor in an occurrence of public or general interest, he emerges from his seclusion and it is not an invasion of his right to privacy to publish his photograph with an account of such occurrence). Plaintiff, by his own admission, is a well-known Cuban author and journalist. His complaint states: "[D]uring the course of [Plaintiff's] literary career, he has written several highly regarded books regarding Fidel Castro and the Castro Revolution, including, *El Ultimo Santuario* and *Dulces Guerreros Cubanos*, and most recently *The Autobiography of Fidel Castro* . . . which has been published throughout the world, and is presently in print in six languages." Complaint at ¶ 1. As such, any intrusion claim, which is not readily apparent from a reading of Count III in any event, is insufficiently pled as Plaintiff's own complaint establishes that he is an actor in an occurrence of public or general interest.

DONE AND ORDERED in Chambers at Miami, Florida, this 28th day of June, 2010.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record