## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-22979-CIV-MORENO/TORRES

NORBERTO FUENTES,

     Plaintiff,

                                 **ORAL ARGUMENT REQUESTED[1]**

v.

MEGA MEDIA HOLDINGS, INC. d/b/a
MEGA TV and SPANISH BROADCASTING
SYSTEM OF DELAWARE, INC., MES
PRODUCTIONS, INC., TELEMOTION
PRODUCTIONS, INC.

     Defendants.

_____/

**MEGA MEDIA HOLDINGS, INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO THE PLAINTIFF'S ENTITLEMENT TO STATUTORY
DAMAGES AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 56 and S.D.L.R. 7.5, defendant, Mega Media

Holdings, Inc. ("Mega"), respectfully submits its Motion for Partial Summary Judgment and

Incorporated Memorandum of Law.  Plaintiff, Norberto Fuentes ("Fuentes"), cannot recover

statutory damages and attorney's fees in connection with his claim for copyright infringement as

a matter of law.

### I.      __INTRODUCTION__

If there were ever a case where a partial summary judgment was essential to simplify the

scope of the actual dispute and the issues to be tried, this is it.  Fuentes has sued Mega and its

parent corporation, Spanish Broadcasting System, Inc. ("SBS"),[2] for copyright infringement,

---

[1] Pursuant to S.D.L.R. 7, Mega has separately filed a request for oral argument.

[2] SBS has separately moved to dismiss Fuentes' claims as it is not a proper party to this lawsuit.

claiming to have suffered damages in excess of one million dollars in connection with the alleged infringement of his literary work, *Dulces Guerreros Cubanos*, and an unpublished, personal home movie entitled *Angola*. The claimed infringement results from Mega's alleged broadcast of these works as part of specific episodes of the award-winning television news program, *Maria Elvira Live*. Yet, when viewed within the proper legal context, it becomes clear that only a minuscule fraction – if any – of Fuentes' purported damages are actually recoverable. The reason is simple: Fuentes cannot recover statutory damages or attorney's fees as a matter of plain and unmistakable law. The undisputed facts foreclose any possibility of Fuentes' recovery of either statutory damages or attorney's fees because he registered the copyrights at issue *after* the alleged infringement. Specifically:

- *Dulces Guerreros Cubanos* was first published by Fuentes in Spain in October of 1999, but not registered for copyright protection in the United States until 2009;

- Though completed in 1999, *Angola* was never published by Fuentes and was not registered for copyright protection until 2009; and

- The alleged infringing broadcasts[3] of *Maria Elvira Live* first occurred in July of 2008.

A plaintiff's entitlement to statutory damages and attorney's fees is a cut-and-dry legal issue: it is date determinative. Pursuant to the unequivocal mandate of Section 412 of the United States Copyright Act, a copyright owner may *only* obtain statutory damages and attorney's fees by: (1) registering the copyright of an unpublished work prior to commencement of any infringement, or (2) registering the copyrighted work within three months after first publishing his work, if the infringement commenced after publication and before registration.

---

[3] For the purposes of determining Fuentes' entitlement to statutory damages and attorney's fees, the Court need not consider whether the specific broadcasts did, in fact, infringe upon Fuentes' alleged copyright interests. Mega reserves all rights to challenge the validity of Fuentes' copyright interests as well as whether its broadcasts of the alleged copyrighted materials is immunized by the *de minimis* and/or fair use doctrines.

Fuentes fails to qualify under either test.  Fuentes registered his copyrights too late – after the alleged infringement commenced.  This undisputable reality is fatal to his claims for statutory damages and attorney's fees under the Copyright Act.  Section 412's mandate is unbending. Section 412's limitation on statutory damages was specifically designed with two objectives in mind.  The first objective was to encourage copyright owners, such as Fuentes, to register their works in an expeditious manner. Congress' second purpose was to reserve statutory damages and attorney's fees for a special class of infringers – *i.e.,* those who, unlike the defendants, had constructive notice that the work was, in fact, covered by a valid copyright.

The undisputed facts establish that Fuentes did not register the unpublished *Angola* before the claimed infringement.  *Angola*'s effective date of registration is May 18, 2009 – ten (10) months after the alleged infringement commenced in July of 2008.  Consequently, even if Fuentes were capable of establishing that Mega and the other defendants' use of *Angola* violated his copyright interests, he is not entitled to either statutory damages or attorney's fees because the unpublished work was registered after the claimed infringement.

The undisputed facts make it equally clear that Fuentes is not eligible for statutory damages in connection with *Dulces Guerreros Cubanos*, as this literary work was not registered within three (3) months of its first publication, and the alleged infringement commenced before its registration.  By Fuentes' own concession, this literary work was first published in October of 1999, but not registered until May 19, 2009.  Having failed to register *Dulces Guerreros Cubanos* within three months of its initial publication in October of 1999 and before the commencement of the alleged infringement, Fuentes cannot avail himself of Section 412's award

of statutory damages or attorney's fees.[4]

Finally, the fact that Mega allegedly re-broadcast the *same* content of *Angola* and *Dulces Guerreros Cubanos* in 2009 after Fuentes registered his copyrights does not resuscitate Fuentes' claim for statutory damages, as the 2009 broadcast relates back to the first broadcast in 2008. Thus, the 2009 broadcast is irrelevant to the clear-cut statutory analysis.

The Copyright Act expressly precludes Fuentes' claim for statutory damages and attorney's fees. The issue is beyond dispute because Fuentes was too late in registering both *Angola* and *Dulces Guerreros Cubanos*. This is the beginning and the end of the analysis – Fuentes cannot recover statutory damages and attorney's fees as a matter of law.

## II.   FACTUAL BACKGROUND

As required by S.D.L.R. 7.5, the facts upon which Mega relies in support of its Motion for Summary Judgment are set forth in its separately filed Statement of Undisputed Material Facts, and the supporting exhibits thereto (exhibits A through H).

## III.   MEMORANDUM OF LAW

### A.   The Summary Judgment Standard.

Summary judgment under Rule 56 is an integral part of the Federal Rules of Civil Procedure, which are designed "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. In interpreting Rule 56, the United States Supreme Court has held that summary judgment is proper if the record evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue is 'material' if it is a legal element of the claim under applicable substantive law which might affect the outcome of the

---

[4] Even if Fuentes could prove infringement – which he cannot – any actual damages would be *de minimis* – the July 13, 2009 broadcast of *Maria Elvira Live*, one of the five episodes implicated in this action, generated total revenues (and again, revenues, not profits) of $2,520.50. (*See* Statement of Undisputed Facts, Exhibit F at Response No. 13).

case." *CC-Aventura, Inc. v. Weitz Co., LLC*, 2007 WL 2986371, at *1 (S.D. Fla. Oct. 10, 2007) (Huck, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Indeed, the "purpose of a motion for summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1400 (11th Cir. 1998) (internal citations omitted).

Further, the interpretation of a statute is a question of law and can be determined by the Court on a motion for summary judgment. *See, e.g., Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 933 (11th Cir. 2000) (statutory interpretation is a pure question of law); *Royal Caribbean Cruises, Ltd. v. United States*, 108 F.3d 290 (11th Cir. 1997) (affirming summary judgment based on the court's appropriate interpretation of a federal regulation); *Rectory Park, L.C. v. City of Delray Beach*, 208 F. Supp. 2d 1320, 1329 (S.D. Fla. 2002) (Hurley, J.) ("Interpretation of a statute or ordinance is a question of law and therefore may be determined by the court on a motion for summary judgment.").

Here, there is no need for trial on the issue of statutory damages and attorney's fees under the Copyright Act.  The Act's plain text bars Fuentes from seeking this extraordinary relief. Judgment is warranted as a matter of law.

**B.    Congress' Intent in Limiting Recovery of Statutory Damages and Attorney's Fees.**

Under the Copyright Act, a copyright owner may be entitled to choose statutory damages instead of actual damages and the infringement profits, but only in specified circumstances. "Statutory damages" are damages specially authorized by Congress that may be obtained even in the absence of evidence of the harm suffered by the plaintiff or the profit reaped by the defendant. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).  Not every copyright owner, however, is eligible to seek statutory damages.

Entitlement to statutory damages and attorney's fees is expressly limited by Section 412 of the Copyright Act. Congress enacted Section 412 for two specific purposes. First, "by denying an award of statutory damages and attorney's fees where infringement takes place before registration, Congress sought to provide copyright owners with an incentive to register their copyrights promptly." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008); *see also Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 329 (4th Cir. 2007) ("By making registration a precondition for the 'extraordinary remed[y]' of statutory damages, Congress sought to motivate speedy registration."); *Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998). Second, Congress designed Section 412 to ensure that statutory damages and attorney's fees are reserved for infringers who had constructive notice that the work was covered by a valid copyright. *Johnson*, 149 F.3d at 505.[5] Given this congressional intent, Section 412 leaves no room for discretion. *See, e.g., Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 281 (6th Cir. 1988) (overturning the district court's award of attorney's fees because the infringing act of copying occurred after first publication but before registration became effective).

### C.   The Copyright Act Expressly Precludes Fuentes' Claims for Statutory Damages and Attorneys' Fees for the Alleged Pre-Registration Infringement.[6]

The analysis of Fuentes' preclusion from recovering statutory damages and attorney's fees is quite straightforward. The Copyright Act expressly provides that:

[N]o award of statutory damages or of attorney's fees … shall be made for:

---

[5] *See Bouchat v. The Bon-Ton Dept. Stores, Inc., See* 506 F.3d 315, 329 (4th Cir. 2007) ("[t]he registration requirement is important to the statutory scheme … Registration promotes orderly resolution of copyright disputes because it creates a permanent record of the protected work, putting the world on notice of the copyright owner's claim.").

[6] Statutory damages and attorney's fees are equally unavailable for Fuentes' claims post-registration infringement because it relies on a re-broadcast of the same content and relates back to the first broadcast in 2008, as set forth in Section D, *infra*.

(1)     any infringement of copyright in an unpublished work commenced **before** the effective date of its registration; or

(2)     any infringement of copyright commenced after first publication of the work and **before** the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412(1)-(2) (emphasis added).

The Act thus provides that statutory damages and attorney's fees are unavailable under two independent scenarios.  First, a plaintiff cannot recover statutory damages and attorney's fees if the work is unpublished and unregistered at the time the alleged infringement commences. *See* 17 U.S.C. § 412(1).  Second, in cases where the infringement of a published work commences before registration, statutory damages are only available if registration was obtained within three (3) months of publication. *See* 17 U.S.C. § 412(2). *See also, Elbe v. Adkins*, 812 F. Supp. 107, 110 (S.D. Ohio 1991) ("Thus, the owner of a copyright may obtain statutory damages only by registering the copyright before any infringement, or by registering it within three months after publishing his work.").

"Publication" for purposes of the statute refers to publication of the copyrighted work by the copyright author, not by the alleged infringer:

Even though [Section 412] does not explicitly require that the distribution of a copyrighted work be made under the authority of the copyright owner for a distribution to constitute publication, 'this, however, is undoubtedly implied. Congress could not have intended that the various legal consequences of publication under the current Act would be triggered by an unauthorized act of an infringer or other stranger to the copyright.'[7]

---

[7]  17 U.S.C. § 101 defines publication as:

[T]he distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease or lending.  The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.  A public performance or display of a work does not of itself constitute publication.

*Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1026 (N.D. Cal. 2003) (citing 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 4.04 at 4-22 to 4-23 (2002)).

In the instant case, the Copyright Act's explicit text prohibits recovery of statutory damages and attorney's fees under the undisputed facts because both works were registered too late in relation to the date of the alleged infringement.   The alleged infringement of the unpublished *Angola* commenced before Fuentes' registration of this work.   Fuentes was also too late in registering *Dulces Guerreros Cubanos*, which was registered almost ten years after its first publication and nearly a year after the alleged infringement commenced.   Put simply, there is no excuse for Fuentes' tardy registration of his works, and the Act accordingly bars his recovery.   Partial summary judgment is therefore warranted.

> ### 1.    Fuentes Cannot Recover Statutory Damages and Attorney's Fees for the Unpublished *Angola* as a Matter of Law.

The plain text of the Copyright Act precludes Fuentes' entitlement to statutory damages and attorney's fees for the unpublished *Angola* because the alleged infringement commenced almost one year ***before*** its registration.   *See* 17 U.S.C. §§ 505, 412(1).   Indeed, it is well-settled that statutory damages and attorney's fees are unavailable for copyright infringement of an unpublished work commenced before the date of its registration.   *Id.; see, e.g., M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1493 (11th Cir. 1990) (finding no attorney's fees or statutory damages were available to MGB under the Copyright Act because the architectural advertising materials were not registered with the copyright office at the time the alleged infringement occurred); *Cornerstone Home Builders, Inc. v. McAllister*, 311 F. Supp. 2d 1351, 1352 (M.D. Fla. 2004); *Heyden v. Multi-Channel TV Cable Co.,* 145 F.3d 1324, 1324 (4th Cir. 1998) ("[S]tatutory damages and attorney's fees are not available for the infringement of copyright in an unpublished work commenced before the date of its registration."); *Gamma*

*Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1111 (1st Cir. 1993) (to maintain an action for statutory damages, the copyrights in the infringed work must be registered).

 *Zito v. Steeplechase Films, Inc.* – a case involving a similar fact pattern – is further instructive. *See* 267 F. Supp. 2d 1022 (N.D. Cal. 2003).   There, the plaintiff, Tom Zito, took a photograph of Ansel Adams in 1980 in front of Half Dome in Yosemite National Park in connection with a story he was writing about Mr. Adams for the Washington Post.[8] *Id.* at 1024. Zito ultimately did not use the photograph as part of his story and ***never*** otherwise published the photograph. *Id.* Decades later, the defendant, Steeplechase, inserted the Half Dome photograph into an Ansel Adams documentary that it was producing without Zito's consent. *Id.* The documentary first aired "around April 2002." *Id.* On June 17, 2002, Zito registered the copyright in his photograph. *Id.* In finding that Zito was not entitled to recover either statutory damages or attorneys' fees, the Court held:

> In this case it is undisputed that plaintiff's photograph was unpublished and unregistered before the defendants [sic] alleged infringement commenced in April or May of 2002. ***Therefore, based on the unambiguous language of the statute, plaintiff is not entitled to attorney's fees or statutory damages***.

*Id.* at 1026 (emphasis added).

 Similarly, Section 412(1) prohibits Fuentes' recovery of statutory damages and attorney's fees for *Angola* as a matter of law because Fuentes registered his work after the alleged infringement.   It is undisputed that *Angola*, Fuentes' home video, was unpublished and unregistered at the time of Mega's purported infringement in July of 2008.  (*See* Statement of Undisputed Facts, ¶¶ 8, 13-19).  Fuentes cannot dispute the timing of these critical events.  (*See* Ex. A to Statement of Undisputed Facts, ¶¶ 13, 14).  Indeed, as evidenced by Exhibit E to the

---

[8] Half Dome is a Yosemite icon.  Rising nearly 5,000 feet above Yosemite Valley and close to 9,000 feet above sea level, Half Dome is a hiker's favorite and was once deemed "perfectly inaccessible, being probably the only one of the prominent points about the Yosemite which never has been, and never will be, trodden by human foot."  *See* www.nps/gov/yose/planyourvisit/halfdome.htm.

Statement of Undisputed Facts, the effective date of the Copyright Registration for *Angola* is May 18, 2009.  (¶ 8).  The record evidence thus establishes that the alleged infringement commenced prior to *Angola's* registration: the first episode of *Maria Elvira Live* at issue was broadcast in July 2008. (*See id.* at ¶¶ 8, 15-16).  Consequently, based on the unambiguous language of the Copyright Act and interpreting case law, Fuentes cannot recover statutory damages or attorneys' fees in connection with the 2008 broadcasts of *Maria Elvira Live* which purportedly infringe his copyright interests in *Angola* as a matter of law.  This point lies beyond dispute, and summary judgment is appropriate.

> ### 2. Fuentes Cannot Recover Statutory Damages and Attorney's Fees for *Dulces Guerreros Cubanos* Prior to Registration as a Matter of Law.

The Copyright Act similarly prohibits Fuentes' claim for statutory damages and attorney's fees relating to the alleged infringement of *Dulces Guerros Cubanos* because this work was also registered too late.  Specifically, it was registered more than three (3) months after its first publication, and the alleged infringement occurred before the work's registration. *See* 17 U.S.C. § 412(2).  Indeed, the plain language of the statute has resulted in an overwhelming body of law holding that statutory damages and attorney's fees are not available if:  (a) the copyright was registered more than three (3) months after the work was first published, and (b) the infringing activity commenced after the date of first publication and before the effective date of registration. *See, e.g., Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp.2d 1248, 1270 (M.D. Fla. 2009); *Cornerstone Home Builders*, 311 F. Supp. 2d at 1352; *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1235 (S.D. Fla. 2008) (Dimitrouleas, J.).[9]

---

[9] *See also, Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 403-04 (2d Cir. 1989); *Evans Newton, Inc. v. Chicago Systems Software*, 793 F.2d 889 (7th Cir. 1986), *cert. denied*, 479 U.S. 949 (1986), *abrogated on*

By way of example, in *Homes & Land Affiliates*, the court ruled that Section 412 foreclosed the defendants' pursuit of either statutory damages or attorney's fees where the defendants first published the copyrighted material in May of 2007 but did not register the copyrighted work until September of 2007 – more than three months after its initial publication, and after the alleged infringement. *See* 598 F. Supp. 2d at 1270. Similarly, in *Robert R. Jones Assocs.*, the Court held that the plaintiff was not entitled to statutory damages as a matter of law where "[t]he promotional brochure was first published in July 1981, but [the plaintiff] did not register its copyrights in the drawings and the floor plans until June 1983." 858 F.2d at 281.[10]

The same holds true here. Fuentes' claims fail as a matter of law because it is undisputed that the alleged infringement of this published work commenced before its registration. 17 U.S.C. § 412(2). Fuentes first published *Dulces Guerreros Cubanos* in Spain in 1999. (*See* Statement of Undisputed Facts, ¶ 7). Nearly a decade later, Fuentes registered the work for protection with the United States Copyright Office. The effective date of the Copyright Registration is May 18, 2009. (*See id.* at ¶¶ 6-7). Thus, at the time of the July 2008 broadcasts of *Maria Elvira Live*, *Dulces Guerreros Cubanos* had been published for over nine (9) years, but had not yet been registered for copyright protection in the United States. (*See id.* at ¶¶ 5-7, 12-19). Fuentes concedes as much in his Amended Complaint. (*See id.* at Ex. A, ¶¶ 9, 14). These undisputed facts foreclose Fuentes from an entitlement to recover statutory damages or attorney's fees in connection with any infringement of *Dulces Guerreros Cubanos* as a matter of

---

other grounds by *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), *as recognized in Harris Custom Builders, Inc. v. Hoffmeyer*, 92 FJ.3d 517, 519 (7th Cir. 1996).

[10] *See generally, Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 407 (D. Md. 2006):

> Plaintiffs concede that Paramount Picture Corporation did not register its copyright for *Star Trek: Enterprise*, Episode 4-11, 'Observer Effect,' until after Defendant commenced infringement of that program, and that the registration was not within three months after the first publication of the work. Therefore, Plaintiffs are not entitled to statutory damages for that program.

law.

Moreover, the fact that *Dulces Guerreros Cubanos* was first published in Spain does not provide Fuentes with any refuge.  Section 412 makes "no exception excusing foreign works from its mandate: it requires registration to obtain statutory damages for both domestic and foreign works."  *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 162 (S.D.N.Y. 2009).  Instead, the Act's exclusion of statutory damages for any infringement that commenced after the first publication of the work and before the effective date of registration, unless such registration is made within three (3) months of the plaintiff's first publication of the work, ***applies equally to foreign works***.  There is no shortage of case law squarely on point.[11]

Fuentes was required to have registered *Dulces Guerreros Cubanos* for copyright registration in the United States prior to its alleged infringement to obtain statutory damages and attorney's fees under the Act.  Having failed to do so, and having waited both in excess of nine (9) years after its publication in Spain ***and*** until after Mega's allegedly infringing broadcast of *Maria Elvira Live* to register his work, Fuentes has waived any right to seek statutory damages and attorney's fees in connection with the infringement of *Dulces Guerreros Cubanos* as a matter of law.

### D.   Fuentes Cannot Recover Statutory Damages or Attorneys' Fees for Any Alleged Infringement that Occurred Post-Registration.

The Court should additionally grant summary judgment in relation to the sole broadcast of *Maria Elvira Live* that occurred after May 18, 2009 (the effective date of Fuentes' copyright

---

[11] *See, e.g., Master Sound Int'l, Inc. v. PolyGram Latino U.S.*, 1999 WL 269958, at *3 (S.D.N.Y. May 4, 1999) ("Registration is a prerequisite to bringing suit for recovery of [statutory] damages and [attorney's] fees, and [Section 412] does not incorporate an exception for works originated in countries outside the United States."); *Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope o Los Angeles, Inc.*, 302 F. Supp. 2d. 1131, 1138-39 (C.D. Cal. 2004) (holding that statutory damages were unavailable on four foreign films because they were not timely registered in accordance with Section 412); 2 Nimmer on Copyright §7.16[C][1], at 7-183 (2008) ("the loss of remedies under Section 412 due to failure to register is applicable to works of foreign origin as well as to domestic works").

registration) because this broadcast relates back to the date of the first alleged infringement (*e.g.,* July 2008), and does not breathe life into Fuentes' right to statutory damages or attorney's fees. As used in Section 412, the term "commenced" is defined as the *first* act of infringement in a series of on-going infringements. "In using the word 'commenced,' § 412(1) instructs us to trace [the defendant's] infringing conduct after registration back to the [defendant's] original infringement.... In other words, 'infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.'" *Bouchat*, 506 F.3d at 330 (quoting *Johnson*, 149 F.3d at 506); *see also, Cornerstone*, 311 F. Supp. at 1352.

In *Mason v. Montgomery Data, Inc.,* the Fifth Circuit Court of Appeals held that the language of 17 U.S.C. § 412 reveals Congress' intent that statutory damages be denied not only for the particular infringement that a defendant commenced before registration, but for *all* of the defendant's infringements of a work if *one* of those infringements commenced *prior* to the registration:

> We thus conclude that a plaintiff may not recover an award of statutory damages and attorney's fees for infringements that commenced after registration if the same defendant commenced an infringement of the same work prior to registration.

967 F.2d 135, 144 (5th Cir. 1992).

Again, this is not a close call. "Section 412 imposes a bright-line rule, barring the recovery of statutory damages for infringement occurring after registration if that infringement is part of an on-going series of infringing acts and the first act occurred before registration." *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.,* 2008 WL 3906889, at *14 (S.D.N.Y. Aug. 21, 2008) (internal citations omitted). Indeed, as summarized by the Sixth Circuit Court of Appeals: "Every court to consider this question has come to the same conclusion; namely, that infringement 'commences' for the purposes of [Section] 412 when the first act in a series of acts

constituting infringement occurs." *Johnson*, 149 F.3d at 506.[12]

In *Amador*, the Court granted summary judgment in favor of an alleged infringer on a similar set of facts. *See Amador v. McDonald's Corp.*, 601 F. Supp. 2d 403, 409-412 (D.P.R. 2009). There, the plaintiff, Antonio Amador, was a photographer who specialized in photographing the Puerto Rican landscape. *Id.* at 405. From 2001 through October 2006, a McDonald's restaurant located in the Luis Muñoz Marín International Airport ("LMMIA") displayed two (2) of Mr. Amador's photographs.[13] *Id.* The photographs "were visible to anyone who entered the McDonald's restaurant during its hours of operation," and were displayed without the plaintiff's authorization. *Id.* In 2006, Mr. Amador for the first time discovered that his photographs were being publicly exhibited in the McDonald's restaurant. *Id.* Thereafter, Mr. Amador filed suit. McDonald's moved for summary judgment. *Id.* at 406.

It was undisputed that the photograph, *Plaza*, was first published on January 1, 2003 and the second photograph, *Cruise Ships*, was first published on January 1, 1999. *Id.* at 410. The copyright registrations for *Plaza* and *Cruise Ships* respectively occurred in November of 2004 and August of 2006. *Id.* It was equally undisputed that McDonald's had been displaying the photographs from 2001 to October 2006. *Id.* "Therefore, [Amador] could only be entitled to statutory damages if this Court finds that the photographs were registered prior to commencement of the infringement." *Id.* In rendering summary judgment on Amador's entitlement to statutory damages in favor of McDonald's, the court noted that:

Defendant's ongoing infringement commenced in 2001 and on that date, neither

---

[12] *See also, Amador v. McDonald's Corp.*, 601 F. Supp. 2d 403, 409-410 (D.P.R. 2009); *C.A., Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 364 (E.D.N.Y. 2008); *X-It Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 528 (E.D. Va. 2002).

[13] The two photographs at issue were titled, *Plaza Las Delicia, Ponce* (hereinafter, "*Plaza*") and *Cruise Ships in Old San Juan Bay* (hereinafter, "*Cruise Ships*").

of the Plaintiff's photos [was] registered.   Therefore, had Defendant checked the Copyright Office's database when it first began its infringing activity in 2001, it would have discovered that Plaintiff's photos were not registered.   Hence, properly applying section 412's incentive structure to the case at hand leads this Court to find that Plaintiff should not receive statutory damages and attorney's fees because he did not satisfy the requirement of prompt registration. Accordingly, as a matter of law, Plaintiff is not entitled to statutory damages and attorney's fees under Sections 504 and 505.

*Id.* at 411.[14]  *See also, Johnson v. University of Virginia*, 606 F. Supp. 321, 325 (W.D. Va. 1985) ("… the alleged post-registration infringements involve only photographs which were first used by defendants prior to registration. Consequently, those alleged post-registration infringements 'commenced' prior to registration, and thus pursuant to § 412, they provide no basis for allowing statutory damages or attorney's fees.").

As in *Amador,* summary judgment is warranted here because any alleged infringement commenced before the works' registration.  Indeed, the record evidence is undisputed.  The first broadcast of *Maria Elvira Live* allegedly containing snippets of *Angola* and *Dulces Guerreros Cubanos* indisputably occurred on July 14, 2008. (*See* Statement of Undisputed Facts, ¶¶ 14, 15-16).   Subsequent television broadcasts of *Maria Elvira Live* occurred on July 15, July 16 and July 17 of 2008.  (*See id.*).  The last episode of *Maria Elvira Live* – which marked the twentieth anniversary of the executions of General Ochoa and Colonel de la Guardia – was broadcast on July 13, 2009.  (*See id.* at ¶ 20).  This sole 2009 broadcast relates back to the first broadcast in July 2008 – the relevant date to assess when the alleged infringement commenced.  This one post-registration broadcast even contained the ***same*** content of *Angola* and *Dulces Guerreros*

---

[14] In reaching its decision, the *Amador* Court rejected the plaintiff's claim that, since the photographs were only visible while the restaurant was open, each day the restaurant opened constituted a new infringement. "The fact that the photos were not visible when the restaurant was closed does not create a separate and distinct infringement every time the restaurant opens." *Id.* at 410.  *See also, Ez-Tixz, Inc. v. Hit-Tix, Inc.,* 919 F. Supp. 728, 736 (S.D.N.Y. 1996) (finding that each sale of an infringing ticket after the copyright's registration was not a separate act of infringement for purposes of Section 412(2) because it was a continuation of the infringement that commenced prior to registration).

*Cubanos* previously broadcast in 2008 before the work was registered.[15]

Mega's post-registration activities do not – and cannot – revive Fuentes' claims for statutory damages and attorney's fees under the Copyright Act because the alleged infringement **commenced** in 2008. In accordance with Section 412's "bright-line" rule, the pre-registration television broadcast of *Maria Elvira Live* in 2008 precludes Fuentes from recovering statutory damages and attorney's fees in conjunction with the one post-registration broadcast of *Maria Elvira Live* in 2009.

## IV.    CONCLUSION

The plain text of the Copyright Act (and well-established law) make it abundantly clear that Fuentes is not entitled to either statutory damages or attorney's fees in conjunction with either *Dulces Guerreros Cubanos* (his published, but untimely registered book) or *Angola* (his unpublished and untimely registered home video). The analysis is thus very simple: Since Fuentes registered his works after Mega's alleged infringement, the Act bars his recovery of statutory damages and attorney's fees as a matter of law.

Accordingly, for the reasons set forth herein, Mega respectfully requests that this Court grant its Motion for Partial Summary Judgment, precluding Fuentes' entitlement to statutory damages and attorney's fees as a matter of law.

---

[15] Mega has produced copies of the July 14, 15, 16 and 17, 2008 broadcasts, as well as the July 13, 2009 broadcast of *Maria Elvira Live*, to Fuentes' counsel and is more than happy to furnish copies of these episodes to the Court should the Court find them pertinent to the resolution of the present motion.

Dated:  August  2, 2010

Respectfully submitted,

By: *s/* James G. Sammataro _____      By: *s/* Raquel Fernandez _____
     James G. Sammataro                                         Richard Dunn

| | |
|---|---|
| James G. Sammataro | Richard Dunn |
| Florida Bar No. 0520292 | Florida Bar No.: 0126953 |
| JSammataro@kasowitz.com | Raquel Fernandez |
| **KASOWITZ, BENSON, TORRES &** | Florida Bar No. 055069 |
| **FRIEDMAN LLP** | **COZEN O'CONNOR** |
| Four Seasons Tower | Wachovia Financial Center |
| 1441 Brickell Avenue, Suite 1420 | Suite 4410 |
| Miami, Florida 33131 | 200 South Biscayne Boulevard |
| Telephone: (305) 377-1666 | Miami, Florida 33131-4322 |
| Facsimile: (305) 377-1664 | Phone: 305-704-5940 |
| *Co-counsel for the defendant, Mega* | Facsimile: 305-704-5955 |
| *Media Holdings, Inc.* | *Co-counsel for the defendant, Mega* |
| | *Media Holdings, Inc.* |

Pursuant to CM/ECF Admin. Pro. Rule 3I(3), Raquel Fernandez provided consent to the electronic execution of her signature by James G. Sammataro.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 2, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a notice of the foregoing document is being served this day on all counsel of record identified in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF this 2nd day of August 2010 to:

The Burton Law Firm
**Richard J. Burton, Esq.**
Attorney for Plaintiff, Norberto Fuentes
2999 N.E. 191 Street, Suite 805
Aventura, Florida 33180
Telephone: (305) 705-0888
Facsimile: (305) 705-0008

s/ James G. Sammataro
Attorney